No. 21-1255

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**DOMINIC BIANCHI, ET AL.,**

*Plaintiffs-Appellants,*

**v.**

**ANTHONY G. BROWN, ET AL.,**

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(James K. Bredar, District Judge)

_____

**SUPPLEMENTAL BRIEF OF APPELLEES**

_____

ANTHONY G. BROWN
Attorney General of Maryland

ROBERT A. SCOTT
RYAN R. DIETRICH
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-7055
(410) 576-6955 (facsimile)

March 12, 2024                                                     Attorneys for Appellees

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................1

I. ANY INQUIRY INTO A WEAPON'S "COMMON USE" OCCURS AT THE FIRST STEP OF THE *BRUEN* FRAMEWORK. ................................................................1

II. PLAINTIFFS BEAR THE BURDEN OF ESTABLISHING THAT A REGULATED OBJECT IS COVERED BY THE SECOND AMENDMENT, AND THUS BEAR THE BURDEN OF DEMONSTRATING THAT THE OBJECT IS IN "COMMON USE" FOR SELF-DEFENSE. ...................................................................................7

CONCLUSION .................................................................................................10

CERTIFICATE OF COMPLIANCE ...................................................................11

# TABLE OF AUTHORITIES

Page

**Cases**

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) .............................................. 9

*Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023) ............................... 2, 4, 9

*Capen v. Campbell*, __ F. Supp. 3d __,
    2023 WL 8851005 (D. Mass. Dec. 21, 2023) ..................................................... 6

*Delaware State Sportsmen's Assoc. v. Delaware Dep't
    of Safety & Homeland Security*, 664 F. Supp. 3d 584 (D. Del. 2023) ................ 7

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ......................................passim

*Hanson v. District of Columbia*, 671 F. Supp. 3d 1 (D.D.C. 2023) ......................... 7

*Hartford v. Ferguson*, __ F. Supp. 3d __, 2023 WL 3836230
    (W.D. Wash. June 6, 2023) .............................................................................4, 10

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) .......................................... 8

*Kolbe v. Hogan*, 849 F.3d 114 (2017) (en banc) ................................................3, 4, 5

*Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023) ...................... 9

*National Ass'n for Gun Rights v. Lamont*, __ F. Supp. 3d __,
    2023 WL 4975979 (D. Conn. Aug. 3, 2023) .................................................7, 10

*New York State Rifle & Pistol Association, Inc. v.
    Bruen*, 142 S. Ct. 2111 (2022) ...................................................................passim

*Oregon Firearms Fed. v. Kotek*, __ F. Supp. 3d __,
    2023 WL 4541027 (D. Ore. July 14, 2023) ....................................................7, 9

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015) ............................................ 8

*Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023) ........................................................... 9

*United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023) .......................................... 6

*United States v. Berger*, No. 5:22-cr-333, 2024 WL 449247
 (E.D. Pa. Feb. 6, 2024)..............................................................................6, 9

*United States v. Daniels*, 41 F.4th 412 (4th Cir. 2022) ........................................... 8

# INTRODUCTION

On March 5, 2024, this Court directed the parties to file supplemental briefs addressing the following issue:

> Whether the inquiry into a weapon's "common use" occurs at the first step or second step of the framework articulated in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In answering that question, the parties are to address who has the burden of establishing a weapon's "common use."

(Doc. 102). As explained below, because the "common use" inquiry is relevant to a threshold determination of whether a regulated object constitutes an "arm" as that term is used in the text of the Second Amendment, that inquiry must therefore occur at the first step of the *Bruen* test. And because, consistent with other constitutional litigation, a party challenging a regulation bears the initial burden of demonstrating that regulated conduct falls within the protections of the Second Amendment, it is that party who must necessarily bear the burden regarding all of the inquiries subsumed within that threshold question, including whether a regulated object is in "common use" for self-defense.

# ARGUMENT

**I.    ANY INQUIRY INTO A WEAPON'S "COMMON USE" OCCURS AT THE FIRST STEP OF THE *BRUEN* FRAMEWORK.**

In *Bruen*, the Supreme Court rejected the interest-balancing test that many courts of appeals had applied since *District of Columbia v. Heller*, 554 U.S. 570

(2008), and replaced it with a two-step test rooted in text, history, and tradition. *Bruen*'s first step asks whether "the Second Amendment's plain text covers an individual's conduct[.]" 597 U.S. at 17. If so, "the Constitution presumptively protects that conduct." *Id.* Only at that point is *Bruen*'s second step triggered, under which "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

One aspect of *Bruen*'s first-step textual determination, and one that is central here, is whether the object being regulated is an "arm." That is because, if a regulated object is not an "arm" as that term is understood for purposes of the Second Amendment, it falls outside of that amendment's protections. *See Bevis v. City of Naperville*, 85 F.4th 1175, 1192 (7th Cir. 2023), *petitions for cert. filed*, Nos. 23-877, 23-878, 23-879 (U.S. Feb. 14, 2024), No. 23-880 (U.S. Feb. 15, 2024) ("We begin by assessing whether the assault weapons and large-capacity magazines described in those laws are Arms for purposes of the Second Amendment. If not, then the Second Amendment has nothing to say about these laws: units of government are free to permit them, or not to permit them, depending on the outcome of the democratic process.").

Recognizing the dispositive nature of such an inquiry, the Supreme Court in *Heller* explored the parameters of what constituted an "arm" such that it would fall within the protections of the Second Amendment. 554 U.S. at 624-28. First,

2

building on the unremarkable assertion that the Second Amendment right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *id.* at 626, the Court noted that "the Second Amendment right . . . extends only to certain types of weapons," *id.* at 623. And stressing that "the inherent right of self-defense has been central to the Second Amendment right," the Court further examined what "types" of weapons fell outside of the pre-existing right that the Second Amendment had codified: "[A]nother important limitation on the right to keep and carry arms [is] that the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627-28. Moreover, the *Heller* Court made the observation, relevant both here and to this Court's en banc decision in *Kolbe v. Hogan*, 849 F.3d 114 (2017) (en banc), that "weapons that are most useful in military service—M-16 rifles and the like—may be banned." *Heller*, 554 U.S. at 627.

As *Heller* thus demonstrates, this threshold examination of whether a regulated object is an "arm" (and thereby protected by the Second Amendment) is part of the initial textual analysis. *Bruen* corroborated this approach. There, after clarifying the general standard to be applied in Second Amendment cases, the *Bruen* Court turned to the question of whether the conduct at issue in that case—carrying a handgun publicly—fell within the amendment's textual protections. 597 U.S. at 31-32. But within this context, the Court first verified that other aspects of the textual analysis had been satisfied. To that end, the Court not only confirmed that the *Bruen*

3

plaintiffs were "part of 'the people' whom the Second Amendment protects," but that the particular weapon being regulated fell within the "arms" protected by the amendment. *Id.* And in making that latter determination, the Court noted that "handguns are weapons 'in common use' today for self-defense." *Id*. at 32.

Hence, to the extent a "common use" inquiry may be implicated, it should be performed at the initial step of the *Bruen* test as part of the determination of whether the weapon at issue constitutes an "arm" for purposes of the Second Amendment. If a plaintiff meets that threshold, and satisfies other aspects of this initial determination,[1] a regulated object will enjoy the presumptive protection of the Second Amendment. That, however, does not end the inquiry. Instead, a finding that a regulated object is an "arm" merely triggers *Bruen*'s second step, and in turn the government's opportunity to demonstrate that the challenged regulation is nonetheless consistent with the amendment's historical tradition. *See Hartford v. Ferguson*, __ F. Supp. 3d __, 2023 WL 3836230, *3 (W.D. Wash. June 6, 2023)

---

[1] As the State has argued, this initial first-step determination also includes an analysis of "the character of the weapon," *Heller*, 554 U.S. at 622, and its suitability for individual self-defense. This type of analysis is exemplified by *Kolbe*, where this Court concluded that assault weapons "are *not* constitutionally protected arms" because their features made them ill-suited for individual self-defense and instead were "weapons that are most useful in military service." 849 F.3d at 136 (citing *Heller*, 554 U.S. at 627). Other courts have engaged in a similar analysis. *See Bevis*, 85 F.4th at 1194 ("We find substantial support for the proposition that the Arms protected by the Second Amendment do not include weapons that may be reserved for military use.").

4

(noting that the presumption that comes with satisfying *Bruen*'s first step "can be overcome" through *Bruen*'s second step).

In light of *Bruen*'s focus on history, it makes eminent sense that a "common use" determination will be made at the threshold stage. Although *Heller* and *Bruen* do instruct courts to look to history for guidance on the definitional meaning of the terms used in the Second Amendment, assessing the constitutionality of assault weapons requires courts to apply that meaning to modern day weapons and circumstances. Consequently, a "common use" inquiry is by its nature a fluid and evolving endeavor that implicates the court's role as fact-finder.[2]

Moreover, conducting a "common use" inquiry as part of the threshold constitutional determination avoids the remarkable notion that a "common use"

---

[2] As this Court pointed out in *Kolbe*, there is profound uncertainty even as to what the basic parameters of a "common use" inquiry might be, including with respect to such questions as: (1) whether a "common use" inquiry focuses on the aggregate number of assault weapons in circulation, rather than the number of *individuals* who own them; (2) whether such an analysis encompasses individuals within the entire United States, rather than within the particular state whose law is being challenged; (3) whether the appropriate analytical timeframe is when the challenged law was passed, or when the pending legal challenge was filed; (4) whether any lawful "use" will be counted, or whether only "use" for individual self-defense will suffice; and (5) whether the "use" determination is subjective (e.g., examining what individual gunowners intend to use the guns for) or objective (e.g., examining how and whether the challenged weapons are actually being used for self-defense). *Kolbe*, 849 F.3d at 135-36. Yet like a "common use" inquiry generally, each of these subsidiary questions implicates fact-finding that is most suited for resolution at the threshold stage of *Bruen*'s first step.

determination will, as plaintiffs claim, be by itself dispositive of the entire Second Amendment analysis. Instead, as it was in *Bruen*, the proper role for the "common use" inquiry is merely to determine whether a regulated object is *presumptively* protected. *See Capen v. Campbell*, __ F. Supp. 3d __, 2023 WL 8851005, *8 (D. Mass. Dec. 21, 2023), *appeal docketed*, No. 24-1061 (1st Cir.) (observing that allowing a "common use" determination to be dispositive would "lead to a host of absurd results," cause "constitutional analysis [to] be trapped in an infinite circularity," and, perhaps most importantly, "would effectively ignore an important underpinning of *Bruen*: that the meaning of the Second Amendment should be grounded in text, history, and tradition, not shifting modern attitudes, and that its protection should be categorical"). Finally, assessing "common use" at *Bruen*'s initial stage is an approach that has been adopted by several other courts. *See, e.g.*, *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (holding that *Bruen*'s "step one . . . threshold inquiry . . . requires a textual analysis, determining whether the challenger is 'part of "the people" whom the Second Amendment protects,' *whether the weapon at issue is '"in common use" today for self-defense,'* and whether the 'proposed course of conduct' falls within the Second Amendment" (emphasis added)).³

---

³ *See also United States v. Berger*, No. 5:22-cr-333, 2024 WL 449247, *6 (E.D. Pa. Feb. 6, 2024) ("[T]he court will assess the common-use issue at step one of the *Bruen*[] analysis."); *Capen*, __ F. Supp. 3d __, 2023 WL 8851005, *7 (noting

6

**II. PLAINTIFFS BEAR THE BURDEN OF ESTABLISHING THAT A REGULATED OBJECT IS COVERED BY THE SECOND AMENDMENT, AND THUS BEAR THE BURDEN OF DEMONSTRATING THAT THE OBJECT IS IN "COMMON USE" FOR SELF-DEFENSE.**

The answer to this Court's second question follows from the answer to the first: Because a plaintiff bears the burden of demonstrating that regulated conduct falls within the scope of the Second Amendment, and because a "common use" inquiry is an integral part of that demonstration, a plaintiff who challenges the regulation of a particular object *ipso facto* bears the burden of establishing that the object is in "common use" for self-defense.

It is true that the Supreme Court in *Bruen* did not explicitly identify which party would bear the burden under its first step. But that is not surprising, given that the initial burden is ordinarily placed on a party challenging a law as a matter of

---

that "[s]ome firearms may be regulated . . . because they are not in 'common use' . . . and therefore fall outside the scope of the Second Amendment"); *National Ass'n for Gun Rights v. Lamont*, __ F. Supp. 3d __, 2023 WL 4975979, *15 (D. Conn. Aug. 3, 2023), *appeal docketed*, No. 23-1162 (2d Cir.); *Oregon Firearms Fed. v. Kotek*, __ F. Supp. 3d __, 2023 WL 4541027, *5 (D. Ore. July 14, 2023), *appeals docketed*, Nos. 23-35478, 23-35479, 23-35539, 23-35540 (9th Cir.) ("To determine whether the conduct at issue is covered by the plain text of the Second Amendment, a court must determine whether the weapon in question is a 'bearable arm' that is 'in common use today for self-defense.'" (citing *Bruen*, 597 U.S. at 28, 32)); *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 16 (D.D.C. 2023) (concluding, "at step one of *Bruen*'s framework, that large-capacity magazines "fall outside of the Second Amendment's scope . . . because they are not in fact commonly used for self-defense"); *Delaware State Sportsmen's Assoc. v. Delaware Dep't of Safety & Homeland Security*, 664 F. Supp. 3d 584, 593 (D. Del. 2023), *appeals docketed*, Nos. 23-1633, 23-1634, 23-1641 (3d Cir.).

7

generally applicable constitutional litigation principles.[4]  *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) ("Under this Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise and Free Speech Clauses.  If the plaintiff carries these burdens, the focus then shifts to the defendant . . . .").[5]  And, consistent with these constitutional principles, the Supreme Court in *Bruen did* expressly allocate the *second*-step burden to the government.  *See Bruen*, 597 U.S. at 44 n.11 ("[B]ecause the Second Amendment's bare text covers petitioners' public carry, the respondents here shoulder the burden of demonstrating that New York's proper-cause requirement is consistent with the Second Amendment's text and historical scope.").  In light of this, it would be constitutional error to interpret *Bruen* as anything other than confirmation of the noncontroversial default principles set forth above.

---

[4] The fact that *Bruen* did not engage with the allocation of the first-step burden is also not surprising considering the Court's observation that the government did not "dispute" that the conduct being regulated (i.e., public carry of handguns) was presumptively covered by the Second Amendment, and the Court's accompanying conclusion that "[n]or could they" have disputed such a conclusion.  597 U.S. at 32.

[5] *See also United States v. Daniels*, 41 F.4th 412, 415 (4th Cir. 2022) ("To prevail in a Fourth Amendment challenge, the criminal defendant bears the burden of establishing a legitimate expectation of privacy in the searched property, at the time of the search, by a preponderance of the evidence."); *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015) ("[W]here a plaintiff claims suppression of speech under the First Amendment, the plaintiff bears the initial burden of proving that speech was restricted by the governmental action in question." (citation omitted)).

Courts that have engaged with this question in the Second Amendment context have thus unwaveringly concluded that a plaintiff bears the initial burden under *Bruen*'s first step of showing that regulated conduct implicates the Second Amendment. Indeed, a panel of this Court recently concluded as much. *See, e.g.*, *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1042 (4th Cir. 2023), *reh'g en banc granted*, No. 21-2017 (4th Cir. Jan. 11, 2024) ("To meet *their burden* at this stage [i.e., *Bruen*'s first step], *Plaintiffs* must prove two things: (1) that 'they are among "the people" entitled to the right,' and (2) that their proposed 'course of conduct' is covered by the Second Amendment's plain text, namely 'keeping and bearing arms.'" (emphasis added)).[6]

---

[6] Other circuits are in accord. *See Antonyuk v. Chiumento*, 89 F.4th 271, 383 (2d Cir. 2023), *petition for cert. filed*, No. 23-910 (U.S. Feb. 20, 2024) (noting that, to "put the burden on the State to establish [a law's] consistency with the National tradition," plaintiffs "were only required to show . . . whether carrying a firearm for self-defense on private property open to the public was within the plain text of the Second Amendment"); *Bevis*, 85 F.4th at 1194 (noting that "the plaintiffs . . . have the burden of showing that the weapons addressed in the pertinent legislation are Arms that ordinary people would keep at home for purposes of self-defense, not weapons that are exclusively or predominantly useful in military service, or weapons that are not possessed for lawful purposes"); *but see Teter v. Lopez*, 76 F.4th 938, 949-50 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, No. 20-15948 (9th Cir. Feb. 22, 2024) (rejecting argument that "the purported 'dangerous and unusual' nature of butterfly knives means that they are not 'arms' as that term is used in the Second Amendment . . . . [Instead], whether butterfly knives are 'dangerous and unusual' is a contention as to which Hawaii bears the burden of proof in the second prong of the *Bruen* analysis."). Similarly, there is a consensus among the district courts. *See, e.g.*, *Berger*, No. 5:22-cr-333, 2024 WL 449247, *6 ("Under *Bruen*, the Government does not have a burden until step two of the analysis."); *Kotek*, __ F. Supp. 3d __, 2023 WL 4541027, *5 n.4 ("While *Bruen* does not specify that the

9

It therefore follows that, because a plaintiff bears the initial burden to demonstrate that regulated conduct implicates the Second Amendment, a plaintiff in turn will bear the burden regarding *all* of the inquiries that inhere in that threshold question. Accordingly, because the question of whether a regulated object is in "common use" for self-defense is one of those inquiries (as are all of the subsidiary inquiries subsumed within, *see* note 2), it is plaintiffs who shoulder the requisite burden. *See, e.g.*, *National Ass'n for Gun Rights v. Lamont*, __ F. Supp. 3d __, 2023 WL 4975979, *15 (D. Conn. Aug. 3, 2023), *appeal docketed*, No. 23-1162 (2d Cir.) ("*Bruen* and *Heller* make clear that Plaintiffs have the burden of making the initial showing that they are seeking to possess or carry firearms that are in '"common use" today for self-defense' and are typically possessed by law-abiding citizens for that purpose.").

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

---

plaintiff bears the burden of showing that the challenged conduct falls within the plain text of the Second Amendment, this Court finds that is the most logical reading of the Supreme Court's opinion."); *Hartford*, __ F. Supp. 3d __, 2023 WL 3836230, *3.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Ryan R. Dietrich

_____

ROBERT A. SCOTT
RYAN R. DIETRICH
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
rscott@oag.state.md.us
rdietrich@oag.state.md.us
(410) 576-7055
(410) 576-6955 (facsimile)

Attorneys for Appellees

## CERTIFICATE OF COMPLIANCE

1. This brief complies with this Court's order of March 5, 2024, because this brief is no more than ten pages, excluding the parts of a brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Ryan R. Dietrich

_____

Ryan R. Dietrich

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| DOMINIC BIANCHI, ET AL., | * |  |
|  | * |  |
| *Plaintiffs-Appellants*, | * |  |
| v. | * | No. 21-1255 |
| ANTHONY G. BROWN, ET AL., | * |  |
| *Defendants-Appellees*. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I certify that, on this 12th day of March, 2024, the Supplemental Brief of Appellees was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Ryan R. Dietrich
_____
Ryan R. Dietrich