No. 21-1255

(1:20-cv-03495-JKB)

# In The United States Court of Appeals
# For the Fourth Circuit

---

DOMINIC BIANCHI, an individual and resident of Baltimore County; DAVID SNOPE, an individual and resident of Baltimore County; MICAH SCHAEFER, an individual and resident of Anne Arundel County; FIELD TRADERS LLC, a resident of Anne Arundel County; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; CITIZEN COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS,

*Plaintiffs – Appellants*,

v.

ANTHONY G. BROWN, in his official capacity as Attorney General of Maryland; COL. WOODROW W. JONES, III, in his official capacity as Secretary of State Police of Maryland; R. JAY FISHER, in his official capacity as Sheriff of Baltimore County, Maryland; JIM FREDERICKS[1], in his official capacity as Sheriff of Anne Arundel County, Maryland,

*Defendants – Appellees*.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

---

## SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLANTS

---

Raymond M. DiGuiseppe
law.rmd@gmail.com
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

---

[1] Everett Sesker is now the Sheriff of Anne Arundel County.

**TABLE OF CONTENTS**

                                                                              **Page**

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION ............................................................................................1

ARGUMENT ..................................................................................................2

  I.  "Common Use" Is Part of *Bruen*'s Historical Inquiry. ...................................2

      A.  The Plain Text of the Second Amendment Applies to All
           "Arms," Common or Not. ...................................................................2

      B.  An Arm "In Common Use" Cannot Be Banned Consistent
           With Historical Tradition.......................................................................4

      C.  *Teter*, Not *Bevis*, Correctly Applies Supreme Court
           Precedent on This Point.........................................................................7

  II.  The State Must Prove the Banned Firearms Are Not
      "In Common Use." .................................................................................8

CONCLUSION ................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page**

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002)...................................................................................9

*Bevis v. City of Naperville*,
    85 F.4th 1175 (7th Cir. 2023).................................................................7, 8

*Counterman v. Colorado*,
    600 U.S. 66 (2023)...................................................................................9

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)..............................................................2, 3, 4, 5, 7, 8

*Duncan v. Becerra*,
    970 F.3d 1133 (9th Cir. 2020) ................................................................ 2

*Duncan v. Becerra*,
    988 F.3d 1209 (9th Cir. 2021)................................................................ 2

*Heller v. District of Columbia* (*Heller II*),
    670 F.3d 1244 (D.C. Cir. 2011)...............................................................9

*New York State Rifle & Pistol Association v. Bruen*,
    597 U.S. 1 (2022)........................................................................1, 2, 3, 6, 8, 9

*Planned Parenthood of Columbia/Willamette v. Am. Coal. of Life Activists*,
    290 F.3d 1058 (9th Cir. 2002)..................................................................9

*Staples v. United States*,
    511 U.S. 600 (1994).................................................................................9

*Teter v. Lopez*,
    76 F.4th 938 (9th Cir. 2023)....................................................................7

*Teter v. Lopez*,
    2024 WL 719051 (9th Cir. Feb. 22, 2024) (mem.)........................................7

*United States v. Miller*,
    307 U.S. 174 (1939)................................................................................5

*United States v. Stevens*,
    559 U.S. 460 (2010)..............................................................................8, 9

**Constitution**

U.S. CONST. amend. II.................................................................................3

**<u>Other Authorities</u>**

Mark W. Smith, *What Part of 'In Common Use' Don't You Understand?:*
*How Courts Have Defied* Heller *in Arms-Ban Cases-Again*,
HARV. J. L. & PUB. POL'Y PER CURIAM (Sep. 27, 2023),
https://bit.ly/49KhTKQ.................................................................................6

N. WEBSTER, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828),
*available at* https://bit.ly/3TclVoq ...............................................................3

*NSSF Releases Most Recent Firearm Production Figures*,
NSSF (Jan. 11, 2024), https://bit.ly/3PdRqx9 ...............................................10

*Poll of current gun owners*, WASH. POST-IPSOS (2022),
https://bit.ly/46CqzRa....................................................................................10

## INTRODUCTION

In *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), the Supreme Court "employ[ed] and elaborate[d] on the text, history, and tradition test that *Heller* and *McDonald* require[d] for evaluating whether a government regulation infringes on the Second Amendment," 597 U.S. at 79 (Kavanaugh, J., concurring). Specifically, the Court explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 17. The *Bruen* analysis thus begins with an examination of the "plain" or "bare" text of the Second Amendment. *See id.* at 44 n.11. This is an exercise determining what the words of the Second Amendment meant at the time of ratification, and it largely involves using dictionaries—although *Heller* and *Bruen* have already done the work to explain the contemporaneous definitions of key words in the Amendment. If the plain or bare text is implicated, the challenged law is presumptively unconstitutional, and the burden is on the government to show both (1) that there exists a historical tradition of regulation that carves out an exception from the protection of the Amendment and (2) that the modern restriction fits into that tradition. *Id.* at 28–29.

1

In this case, which involves a ban on common semiautomatic firearms, the textual question is straightforward. As the Supreme Court has held, as a plain text matter, "arms" at a minimum includes all firearms, and there is no dispute that the semiautomatic firearms Maryland bans are firearms. *District of Columbia v. Heller*, 554 U.S. 570, 581–82 (2008). The burden therefore falls to the State to demonstrate a tradition of regulation that would support its ban. But here too the Supreme Court has already addressed the issue, as it has determined that as a matter of history only "dangerous and unusual weapons" can be banned. *Bruen*, 597 U.S. at 21. It follows from this that "the Second Amendment protects the possession and use of weapons that are in common use," *id.* (quotation marks omitted); such weapons necessarily are not dangerous and unusual. Maryland's burden in this case, therefore, is to show that the banned firearms are not in common use. That is an impossible task, as the paradigmatic firearm it seeks to ban is "the most popular rifle in American history," *Duncan v. Becerra*, 970 F.3d 1133, 1148 (9th Cir. 2020), *vacated* 988 F.3d 1209 (9th Cir. 2021), and the others at issue are of the same basic type (semiautomatic rifles).

## ARGUMENT

### I.    "Common Use" Is Part of *Bruen*'s Historical Inquiry.

#### A. The Plain Text of the Second Amendment Applies to All "Arms," Common or Not.

As *Bruen* instructs, the analysis begins with the text, a straightforward inquiry in this case. *Bruen* repeatedly emphasized that the subject of this analysis is the

2

Amendment's "plain text," 597 U.S. at 17, 24, 32, 33, or "bare text," *id.* at 44 n.11. In other words, the focus is only upon the words of the amendment, their historical meaning, and what they fairly imply. Distinctions that do not appear on the face of the text cannot be found at this stage of the analysis and *must* be derived, if at all, later, through history.

The plain text of the Second Amendment states that it protects the right "keep and bear [a]rms." U.S. CONST. amend. II. The question here, is what was understood by the term "arms" at the Founding. *Heller* has already answered this question. "The 18th-century meaning is no different from the meaning today." *Heller*, 554 U.S. at 581. "The 1773 edition of Samuel Johnson's dictionary defined 'arms' as 'weapons of offence, or armour of defence.'" *Id*. And "Timothy Cunningham's important 1771 legal dictionary defined 'arms' as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id*. The Court also cited without quoting Webster's 1828 American Dictionary of the English Language, which gave as its first definition of arms "weapons of offense, or armor for defense and protection of the body," and said that "in law, arms are any thing which a man takes in his hand in anger, to strike or assault another." N. WEBSTER, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828), *available at* https://bit.ly/3TclVoq. Firearms plainly are encompassed within "arms." Indeed, while the Court noted one anomalous Founding-era source that "limited 'arms' (as opposed to 'weapons') to

3

'instruments of offence generally made use of in war," the Court emphasized that "even that source stated that all firearms constituted 'arms.'" *Heller*, 554 U.S. at 581. In sum, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Id.* at 582. And all firearms are arms. Because the Maryland law challenged here bans firearms, the plain text is implicated, and the burden is on the State to justify its law.

**B. An Arm "In Common Use" Cannot Be Banned Consistent With Historical Tradition.**

Typically, the burden would now shift to the State to establish a relevant tradition of regulation to support the law, and to show that its law falls within that tradition. Here, however, the first part of that analysis has already been done by the Supreme Court. Like this case, *Heller* involved a ban on a type of firearm (there, handguns). As explained above, as a matter of plain text the Court determined that all firearms were "arms." And more generally, the Court determined that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. In Part III of *Heller*, the Court turned to historical limitations on the textual scope of the right. *See id.* at 626–628; *see also id.* at 595 ("Before turning to limitations upon the individual right, however, we must determine whether the prefatory clause of the Second Amendment comports with our interpretation of the operative clause."). Despite its expansive textual scope, the Court recognized that ultimately the Second Amendment "was not a right to keep

4

and carry any weapon whatsoever." *Id*. at 626. Rather, the type of arms that are protected is limited by "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 627 (emphasis added).

Because only dangerous and unusual weapons can be banned, it follows that arms "in common use at the time" are protected. *Id.* at 627. After all, an arm that is in common use cannot be both dangerous and unusual. This conclusion was supported by history as well, because normally "when called for [militia] service, [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id*. at 624 (brackets in original) (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). Although this particular quotation from *Heller* precedes its historical analysis, that is because this is the point of the opinion in which the Court was explaining that its textual interpretation of the Second Amendment was consistent with *United States v. Miller*. As part of that discussion, the Court stated that, "[w]e may as well consider at this point (for we will have to consider eventually) *what* types of weapons *Miller* permits." *Id*. (emphasis in original). Based in part on the quotation above about the use of common arms in militia service, the Court "read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id*. at 625. That accords," the Court explained, "with *the historical understanding of the scope of the right*, see Part III, infra." *Id*.

5

(emphasis added). Thus, even though this discussion took place outside of the Court's analysis of historical limits on the right, the Court made clear that those historical limits were what was being addressed.

*Bruen* confirms that "common use" is a rule derived from history. *See* Mark W. Smith, *What Part of 'In Common Use' Don't You Understand?: How Courts Have Defied* Heller *in Arms-Ban Cases-Again*, HARV. J. L. & PUB. POL'Y PER CURIAM (Sep. 27, 2023), https://bit.ly/49KhTKQ. When *Bruen* explained its framework, "common use" was the example it chose for how to use the "historical understanding of the Amendment to demark the limits on the exercise of the right." 597 U.S. at 21. Once it was established that the arms at issue (handguns) were "in common use today for self-defense," there was no need for any further analysis of the type of arm at issue, textual or historical. *Id.* at 32. In distinguishing colonial laws that allegedly restricted the carrying of handguns, *Bruen* explained that regardless of what was true in colonial times, handguns are in common use today. That was significant because "colonial legislatures sometimes prohibited the carrying of dangerous and unusual weapons," and *in Heller*, "[d]rawing from this *historical tradition*, [the Court] explained there that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id.* at 47. If there was any doubt that *Heller*'s statements about "common use" were derived from history, *Bruen* put them to rest.

6

### C. *Teter*, Not *Bevis*, Correctly Applies Supreme Court Precedent on This Point.

The best reasoned recent decision of the Courts of Appeals applying these precedents is consistent with this interpretation. In a now-vacated decision that will be reconsidered en banc, a panel of the Ninth Circuit rejected the argument that the allegedly "dangerous and unusual" nature of butterfly knives "means that they are not 'arms' as that term is used in the Second Amendment." *Teter v. Lopez*, 76 F.4th 938, 949 (9th Cir. 2023), *reh'g en banc granted, vacated*, 2024 WL 719051 (9th Cir. Feb. 22, 2024) (mem.). Instead, citing the same portions of *Heller* discussed above, the panel noted that "the relevance of a weapon's dangerous and unusual character lies in the '*historical tradition* of prohibiting [such] weapons.' " *Id.* at 949–50 (quoting *Heller*, 554 U.S. at 627) (emphasis in *Teter*). Therefore "whether butterfly knives are 'dangerous and unusual' is a contention as to which Hawaii bears the burden of proof in the second prong of the *Bruen* analysis," and since whether an arm is "dangerous and unusual" depends in part on "whether the weapon is commonly possessed by law-abiding citizens for lawful purposes," it was up to Hawaii to prove the arms were not in common use. *Id.* at 950 (quotations omitted).

On the other hand, the Seventh Circuit recently badly misapplied *Heller* and *Bruen* in *Bevis v. City of Naperville*, 85 F.4th 1175, 1192–93 (7th Cir. 2023). The Seventh Circuit strained to support its decision, purporting to find the phrase (from *Heller*'s textual analysis) "bearable arms" to be essentially code for "weapons in

7

common use for a lawful purpose." *Id.* at 1193. But in doing so, it ignored the breadth of *Heller*'s textual analysis and missed that *Heller* was dealing with *history* in its discussion of "common use." *Id. Bevis* also reasoned that "arms" cannot include all bearable arms because the Supreme Court said "machineguns" may be banned from civilian use. *Id*. at 1175. But under *Heller* machineguns are within the plain text; *Heller* posited that they potentially could be regulated based on the *historical tradition* of restricting dangerous and unusual arms. *See* 554 U.S. at 627.

**II. The State Must Prove the Banned Firearms Are Not "In Common Use."**

If a statute restricts conduct covered by the plain text of the Second Amendment, the burden falls only on the government to prove that its law is constitutional with reference to history. *See Bruen*, 597 U.S. at 24, 33–34, 38–39, 60, 70. That means the State must establish both a historical tradition and that its restriction "is consistent" with that tradition. *Id.* at 24. This case thus reduces to whether the State can prove that the banned firearms are dangerous and unusual, including showing that they are not "in common use."

This not only is the proper reading of *Bruen* on this point but also is consistent with how the Supreme Court assigns burdens to the government in the First Amendment context. In support of its analytical framework, *Bruen* noted that the government generally bears the burden of "point[ing] to *historical* evidence about the reach of the First Amendment's protections." 597 U.S. at 24–25 (citing *United*

8

*States v. Stevens*, 559 U.S. 460, 468–71 (2010)). In such a case, the government must prove both that a type of speech is historically unprotected and that the communication covered by the challenged law (or at issue in a prosecution) is of that type. *Id.*; *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002) ("[T]he Government must prove that the work, taken as a whole" is obscene.); *Counterman v. Colorado*, 600 U.S. 66, 69 (2023) (true threats); *Planned Parenthood of Columbia/Willamette v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1107–08 (9th Cir. 2002) (incitement).

The State cannot show the semiautomatic rifles banned by Maryland are not "in common use." Semiautomatic firearms "traditionally have been widely accepted as lawful possessions." *Staples v. United States*, 511 U.S. 600, 612 (1994). Indeed, such firearms have been commercially available for over a century. *See Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). AR-style rifles, the prototypical firearm banned by the State, are the best-selling rifles in the nation and among the most popular firearms in the country, period. Pls.' Suppl. Opening Br., Doc. 42, at 28–29 (Aug. 22, 2022); Pls.' Suppl. Reply Br., Doc. 66 at 8–9 (Oct. 31, 2022). In the year and a half since Plaintiffs briefed these issues to this Court,[2] additional sources have confirmed this point. The

---

[2] As an additional update to Plaintiffs' earlier submissions, Dominic Bianchi and Micah Schaefer no longer reside in Maryland. Field Traders LLC no longer does

9

Washington Post, for instance, published a poll demonstrating that 20% of all American firearm owners (approximately 16 million people) own at least one AR-15-style semiautomatic rifle. *Poll of current gun owners* at 1, WASH. POST-IPSOS (2022), https://bit.ly/46CqzRa. Of those owners, 91% identified "protect self, family and property" as a reason for owning an AR-15 style rifle (65% major reason, 26% minor reason), and other common reasons for owning them included target shooting (90%), in case law and order breaks down (74%), and hunting (48%). *Id.* at 1–2. Recently updated industry data shows that from 1990 to 2021, over 28 million AR and AK type rifles (both banned by Maryland) were produced for sale in the United States. *NSSF Releases Most Recent Firearm Production Figures* at 7, NSSF (Jan. 11, 2024), https://bit.ly/3PdRqx9.

These sources confirm that the State simply cannot demonstrate that the banned firearms are not in common use. It follows that the State's ban is unconstitutional.

## CONCLUSION

For the foregoing reasons, the State bears the burden to show that the banned firearms are not in common use. Because the State cannot do so, the Court should reverse.

---

business in Maryland. David Snope continues to reside in Maryland and has standing to maintain this suit.

Dated: March 12, 2024            Respectfully submitted,

                                 /s/David H. Thompson
Raymond M. DiGiuseppe            David H. Thompson
law.rmd@gmail.com                Peter A. Patterson
The DiGiuseppe Law Firm, P.C.    William V. Bergstrom
4320 Southport-Supply Road,      Cooper & Kirk, PLLC
Suite 300                        1523 New Hampshire Avenue, NW
Southport, North Carolina 28461  Washington, DC 20036
Phone: 910-713-8804              (202) 220-9600 / (202) – 220-9601
Fax: 910-672-7705                dthompson@cooperkirk.com

                                 *Counsel for Plaintiffs-Appellants*

11

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Plaintiffs-Appellants' Supplemental Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a). The brief is prepared in 14-point Times New Roman font, a proportionally spaced typeface and it is double-spaced. Pursuant to this Court's Corrected Order, Doc. 102 (Mar. 6, 2024), this brief is 10 pages, as measured by Microsoft Word.

/s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellants*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25(d), I hereby certify that

on March 12, 2024, I electronically filed the foregoing brief with the Clerk of the

Court by using the appellate CM/ECF system. Service on counsel for all parties has

been accomplished via ECF.

/s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellants*
